May it please the court, my name is David Bramer for the appellants in this matter. Your honors, the city's demolished the Garrett's townhome without reasonable notice or an opportunity to be heard. After all liens on the property had been canceled, the taxes paid, when the Garrett's complained, the city billed them $11,000 for the cost of the demolition, a new lien on their property which is accruing a rate of 1% per month. The Garrett's need relief now and they're entitled to seek that relief in federal court under their federal constitutional claims without exhausting a state inverse condemnation procedure that cannot adequately redress their injuries. The hardship from holding the review in this case should be clear. As I mentioned, the Garrett's need relief sooner not later. There's a very real chance that they will lose this property because of a lien that's been unconstitutionally imposed on their property through an unconstitutional demolition. The state inverse condemnation action cannot provide them with relief that will stop this lien and it cannot provide them with their full damages. The lien is for the demolition costs? Yes, your honor. The inverse condemnation action couldn't vacate that lien? I don't know how those work. No, it couldn't, your honor. The inverse condemnation action in Louisiana state court could provide damages for the lost value of the building that was demolished, but it couldn't provide declaratory relief or any of that sort of relief that would stop the bill that's been imposed on them that's now a lien. It couldn't do any of those types of things. That's one reason why the inverse condemnation procedure in Louisiana is not an adequate procedure. It's also inadequate because the city has a pattern and policy of not paying out state court judgments, although it will pay out federal court judgments, give them preference, but it won't pay out state court judgments. So even on the compensatory side of the equation, the state court inverse condemnation remedy wouldn't be adequate in this particular case. Your honor, the court asked about the Nick case and I want to address that briefly because of that. The Nick case only matters in this, to the outcome of this case, if you arrive at two conclusions. One, that the Garrett's due process and seizure claims are ancillary to their takings claim and two, that the takings claim itself in this case cannot be brought in federal court. If either one of those premises is not correct, the Nick is not relevant to the outcome of this case and the court should not wait for that decision. Again, particularly given that the Garrett's, they have this lien on the property, they have a accruing bill that was unconstitutionally imposed, so they need to get relief sooner and not wait for a year for the Supreme Court to issue a decision in Nick, which has very little relevance to these particular claims. The city argues, your honor, that this case is governed by Rosedale and John Corp. It is not for three reasons. The injuries and relief in this case are broader than the injuries and relief sought in Rosedale and John Corp. There's no seizure claim in Rosedale and John Corp. There is one here, an unreasonable seizure claim under the Fourth Amendment. In John Corp and Rosedale, the issues weren't fit for review and there was no hardship. That was the ultimate decision in that case. Here, the opposite is true. The issues are fit review. The building was demolished. Nobody disputes that. The bill was imposed. Nobody disputes that. The hardship is obvious, again, given the nature of the demolition and the bill that's imposed. The city has a pattern, unfortunately, of failing to provide notice in demolition, not taking reasonable precautions, and that's what we're asking it to do, or at least one part of what we're asking it to do. In the Walker case, in the Kennison case, and now in this case, all three of those cases, you have a rush to demolition without taking reasonable precautions and trying to notify and give property owners an opportunity to be heard or to correct the problem. What's the case involving the church in New Orleans? That was the Rosedale case, Your Honor. Rosedale. And why doesn't that apply here? Well the injuries, Your Honor, that case does not apply because the injuries and relief in this case are broader. In Rosedale, the only damages were sought, and it's just another way of saying the only injury was the lost value of the building that was damaged. There wasn't an attempt to seek broader damages under Section 1983. There wasn't a problem with a lien that was imposed because of an unconstitutional demolition, as you have here, which we're seeking to invalidate and enjoin. So in Rosedale, that is the primary reason for distinguishing it. But also in Rosedale, you didn't have an unreasonable seizure claim, and you didn't have the same type of hardship problems you have in this case. I don't think the Rosedale court was aware of the city's refusal to timely pay out or even ever pay out state court damages judgments. So for all those reasons, you have a different circumstance here, and I think it would be appropriate to distinguish Rosedale, as well as John Corp, for those reasons. So you're saying your failure to pursue state court remedies is in part based on this pattern of the city failing to honor state court judgments? Yes, for the claim, the takings claim in this case. Not for the other claims. The other claims, the due process and the unreasonable seizure claims, the state inverse condemnation state remedies are irrelevant to your ability to bring a pre-definition notice claim or an unreasonable seizure claim. And I guess that's why, so when the cases tell me that a takings claim is not ripe until compensation has been denied by the state, I don't know how you get to that without pursuing the state court remedy. Right. Williamson County does say that. However, Williamson County is also a prudential rule. It is not a jurisdictional barrier, and a prudential rule requires consideration of all the factors, including the hardship of withholding review and the fitness of the issues. And the circumstance that you brought up, the state court's inability to get the city to honor damages award, is a factor in the prudential analysis of whether Williamson County should apply to this takings claim. And in this particular case, because of a confluence of factors, including that, it would be proper to waive Williamson County under the circumstances of this case. In particular, because state courts cannot enforce judgments against the city, and because you would be splitting the claims in here, so you'd have due processes and seizure claims in federal court, and a takings claim in state court, and because of the hardship to the Garrets of needing relief now, and the best and the fastest and the proper way to get that relief is to let the claims proceed in the district court, and then maybe we can work something out with the city that will resolve all that. So that's a long answer to your question. Williamson County does not categorically apply, and in this case it should not apply. As I mentioned, that's only an issue for the takings claim. I think you understand that. But due process and seizure claims, that wouldn't matter. The city, I was previously making the point, the city does seem to have a pattern here of demolishing properties too quickly and without taking reasonable precautions, and I think the best way to stop that is to allow, or one way to stop that is to allow the Garrets to proceed in this particular case under the facts in the federal court, and to prove that the city demolished a property without adequate process, unreasonably, and caused the taking and so doing. If there's no more questions, I'll reserve my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Stephanie Dobalina, and I'm here on behalf of the City of New Orleans. You've already heard from the appellant concerning their position as to why this court should overrule the district court's ruling dismissing the case for ripeness and under the general rule that a claim is unripe if further factual development is required. The city supports the decision of the lower court and requests that this honorable court uphold that ruling. Thus far, the record in this case is very short. No discovery has been done, the city has never filed an answer, it was simply a 12B1 motion that was filed, so there hasn't been a formal position allocated as to what facts are in dispute and what are not. However, what isn't in dispute and is supported by both the complaint filed by the appellants, the opposition to the city's 12B1 motion to dismiss, along with the attachments included in that, and the lower court's ruling, is that the Garretts purchased a blighted property on an adjudicated tax sale in October of 2015. Let's see. The blighted structure was deemed imminent danger of collapse, there's a certain ordinance that regulates imminent danger of collapse, and the city demolished it under that procedure in January of 2016. The appellants have not sought any redress in state court and didn't file an inverse condemnation action in state court. No facts concerning the imminent danger of collapse demolition process have been presented to this court or developed. What is before the court is the preliminary determination of the limited, if this court of limited jurisdiction has subject matter jurisdiction to hear the case. We assert that it's not right. The plaintiff's complaint alleges a constitutional tort under 42 U.S.C. 1983 and a denial of due process and just compensation under the 4th, 5th, and 14th Judgment against the city for compensation, attorney's fees, cost, and declaratory relief from the lien that the city issued for the cost incurred by the demolition. The appellants clarified on page 6 of their opposition to the city's motion to dismiss that they do not contest the validity of the city's imminent collapse, imminent danger of collapse ordinance. It's only its application in this instance. Therefore, it's clear that the plaintiff's due process claim is not facial but merely as applied. First, we'll address the takings claim. The district court found that pursuant to Williamson, the appellant's claim for a taking isn't right because they haven't been denied just compensation through an inverse condemnation action. The court found because the violation of the takings clause had not been asserted through that action, the appellants had not been denied just compensation, therefore there was no violation of the 5th Amendment. Plaintiff's property has been damaged and therefore the proper action is to seek redress under inverse condemnation. The appellants argue, admit- Counsel, are you familiar with Bowlby v. City of Aberdeen? Yes, Your Honor. Tell me why that doesn't apply in this case because it said there, a claimant need not pursue state court remedies to recover the value of their property where potential damages for a due process violation and a takings claim are not necessarily identical. Well, and that's actually what I was about to get into, explain that actually the Garrets' understanding of Louisiana's state inverse condemnation actions is misplaced. They have cited two case law that was prior to our revision of the Louisiana Constitution in 1974. So the position that Williamson should be disregarded because there are distinct and separate claims is of no moment. Our actual inverse, in 1974, the Louisiana Constitution was expanded and it was in order to provide all damages possible for an inverse condemnation action. The Louisiana Constitution, Article 1, Section 4 is the authority for an inverse condemnation action. B1 states that the property shall not be taken or damaged by the state or its political divisions except for public purposes with just compensation paid. Furthermore, Section B5 states that in every expropriation or action to take property pursuant to the provisions of the section, a party has the right to trial by jury. Whether the compensation is just, the owner shall be compensated to the full extent of his loss except as otherwise provided in this Constitution. The full extent of the law shall include but not be limited to the appraised value of property in all costs, inconvenience, and any other damages incurred because of the expropriation. There's a multitude of case, Louisiana case law that supports this. Specifically, supports the fact that all damages, that there is no separation between these due process claims because there's an injunction sought. As your question earlier, Judge King, that why couldn't an inverse condemnation action invalidate the lien? It could. But the claims are not identical, are they? Well, it's because the claim... You have a due process violation and then you have a takings claim. Yes, your honor. In this case, the city demonized their property without giving them notice and then billed them for it. Yes, your honor. That's under the process of the IDC. The IDC ordinance does not require notice. It goes through a process. None of that information has been put in, but it was destroyed by fire. It's been blighted since 2005 when Katrina happened, and they purchased it in 2015. Once that information gets into a record on an inverse condemnation action, it'll prove that really they correlate, they're ancillary, the due process claims, because this taking claim... Ms. Tobolino, Judge Jones, I have a couple questions about what you were just asserting. Yes, your honor. You were asserting that under Louisiana Condemnation Law, as it now stands, that the garret could recover not only for the value of the building destroyed, but also for the cost of demolition and the removal of the lien. Is that what you're asserting? Yes. And if so, what's your asserting? If it's not in the language from a state constitution, it's another thing to have an implementation in the state's case law. Yes, your honor, and I do have a case on point. The Louisiana Supreme Court decision of state through Department of Transportation versus Chambers, it's a 1992 case, which is subsequent to the 1974 expansion in the constitution codified at 595SO2D598, states, there can be little doubt that the aim of Article 1.2 and Section 4 of our state constitution, and requiring that the owner shall be compensated for property taken or damaged to the full extent of the loss, was to assure that the state and its subdivisions compensate owners for any taking or damaging of their rights with respect to the things, as well as for any taking or damaging of objects of those rights. The history of Section 4 reveals a desire to increase the level and scope of compensation beyond that provided by pre-existing state law. The change from the 1921 constitution language, which was just an adequate compensation, to the new phrase, compensated to the full extent of his loss, was deliberate and prompted by a belief on the part of the sponsors that inadequate awards had been provided under the prior law. The court went on to state that the purpose of the additional language in Article 1, Section 4, was to compensate an owner for any loss sustained by reason of the taking, and not merely restricted under the former constitution, to the market value of the property taken, and the reduction in the market value of the remainder. In the case of Mosse Motors versus the Sewage and Water Board of New Orleans, hailing from the Fourth Circuit of Louisiana, 1999 case, codified at 753-SO2D-269, they noted that the Louisiana constitution does not simply require that the owner of a condemned or damaged property be compensated with the market value of the property and severance damages to the remainder, but he be compensated to the full extent of his loss and placed in as good a position as he enjoyed prior to the taking. There's also case law where attorney's fees are awarded in inverse condemnation actions. The case of the Board of Supervisors of LSU versus Dixie Brewing, codified at 200-SO3D-977, also hailing from the Fourth Circuit in 2016, awarded attorney's fees for an inverse condemnation action, because the final amount awarded was greater to what was offered for the taking. So, attorney's fees were awarded. So there is a vast array of remedies that can be sought under the inverse condemnation action. Actually, even the Louisiana Fourth Circuit case of Avenal versus State Department of Natural Resources, codified at 858-SO2D-697, stated that under the takings provision of the Louisiana constitution, an owner of property by the state or state entity has rights to compensation that go beyond the rights of the U.S. constitution and that of other states. So accordingly, if the appellants were to follow the proper procedure by pursuing an inverse state condemnation action, they could receive a judgment that would moot the others. These claims... Let me ask you a follow-up to that, because you do not seem to take issue with their assertion that the city of New Orleans simply does not pay those judgments. Yes, Your Honor. Actually, we do. That wasn't addressed in the briefing, but it is... Well, it wasn't addressed in the briefing, and therefore it wasn't addressed. And it's an assertion that they made in their pleadings and repeatedly in arguments that you had a chance to challenge. And it seems to me that we would be judicial idiots to close our eyes, rely on Williamson just as a rote matter and say, well, any opportunity for a remedy of state law has to be followed because it's there, if in fact it is a vain hope because the city won't pay. Well, the city does pay, and the case of Stanford v. Town of Ball, which is a Third Circuit case from 2008, explains that what happens within the state of Louisiana, the way our Constitution is drafted, is that the city doesn't have to immediately pay a state court judgment. It has discretion as to how funds are allocated. And this is based on bankruptcy issues. So it's a design of the separation of powers under the Louisiana Constitution that the judiciary does have the power and has a binding judgment against the city. However, the legislature has the authority to allocate funds as they see fit. Therefore, an ordinance is passed for that. But the city does pay on our judgments, and we've actually been taking, this past year, we've been paying several of the judgments that were on the list. So it's not something that we ignore. It's just... We had a panel last November, December, that heard another case where the city had just failed to identify the proper owner of properties before it demolished it, and then there are at least two others that are cited to us in briefings. I hope the city's payments are catching up with the amount of due process that's not being observed. Well, yes, and Your Honor, one of the things that hasn't been presented before the court because of the preliminary proceeding that we're in is that the ordinance for imminent danger of collapse does not require notice to the owner of the property prior to demolition. The claim... Miss, I mean, here I begin to personally get a bit annoyed because you, your reply brief brought up all these arguments about imminent collapse, danger, and so on, that frankly are not pertinent to a dismissal on the pleadings, because on the pleadings or jurisdiction or whatever, we are considering only what the plaintiff alleged, not what your defenses are. Correct. You may have those defenses. In fact, if we vacate and remand for further proceedings by the district court, you may prevail on those defenses, but they're not properly before us as I see it. Yes, and so that's one of our positions is that this inverse condemnation action would flush out these factual issues that need to be determined, which are the due process issue and the takings issue that are ancillary to the takings issue. It seems to me that you're familiar with the Soldall case, aren't you? I'm sorry, could you repeat that? The Supreme Court case of Soldall? I have read it before, but I can't recall off the top of my head the... Well, I'm not going to tell you I've read it in the last 24 hours, but as I recall, the Supreme Court's claim that property rights is cognizable under the Constitution, one of those is the Fifth Amendment, one of those is the Fourteenth Amendment, and another one is the Fourth Amendment, so that when the police barge into your home without cause and wreck your property, you have a claim. In Soldall, in fact, what they were doing was participating in a disdain of creditors' property or something like that. But anyway, the Supreme Court made very clear that the Fourth Amendment is the separate ground of recovery here, and I do not think that I'm not yet persuaded, so you have an opportunity to persuade me as to why they should not be able to proceed on their Fourth Amendment claim. Well, Your Honor, it goes to the fact that one of the cases that is directly on point is the Rosedale case. It's very similar in factual matters. The procedural due process claim that is being asserted here is procedure, how it was applied to them. In an inverse taking claim, the state court can look at not only whether there was a taking and not just compensation, and that whether or not there was adequate due process provided. There's also nothing to dissuade the court from reviewing the other constitutional claims that are asserted by the plaintiffs. The case of San Remo states that... Yeah, but since when? There's never been, I mean, for 30 years, there's not been an Rosedale 1983 claim under the Fourth Amendment. No, and we don't assert that there is, but... Well, that's what you are asserting when you're saying, oh yeah, well, an inverse condemnation, they'll handle it. I'm asserting that the urgency that is argued by the Appellants' Counsel is just not present because this is a property that wasn't occupied. These are people that live outside of the state. An inverse condemnation action could resolve these issues, could move them. However, once we find out if there is just compensation has been denied, then the additional factual issues will have been developed to make the procedural due process claim and the other claims that they make justiciable and right. I guess I'm getting confused because I think I hear Judge Jones asking about the Fourth Amendment. The Fourth Amendment as to exhaust the seizure claim. Exactly. That's what I heard Judge Jones asking about, but you seem to be talking about due process. No, the seizure claim, we have the position that the seizure claim also requires additional facts. The lower court had held that it was unright because of additional factual development that needed to take place. The seizure claim and the due process claim were both denied as unright because under John Court that additional factual development was required. They cited to the severance case to look to the factors to determine whether or not the rightness of a seizure claim, those being whether the issues are purely legal, whether the issues are based on an agency final action, whether the controversy has a direct and immediate impact on the plaintiff, and whether the litigation will expedite rather than delay or impede. The lower court found that the appellant's claims are not completely legal, but they depend on factual resolution that will be flushed out during a takings and inverse condemnation action. Isn't it true? Didn't she draw that conclusion only by assuming certain facts against the plaintiff? The facts that the lower court depended on. I mean, the fact is the building has been destroyed. The fact is the bill was sent after the plaintiff complained about this. The city sent them a notice of the cost and imposed a lien. I mean, what's unright about that? Any more than the police barging into your house and destroying your stuff without cause. Well, Your Honor, it's the additional factual development, whether there was a taking with an analysis of the actual facts to the imminent danger of collapse. I think that's assuming the conclusion of your argument. I do not think that's a legitimate interpretation or extrapolation of the plaintiff's complaint. By the way, did the district court hold oral arguments before she dismissed the case? No, Your Honor. Okay. I see that my time is almost up. In closing, we'd like to state that the city supports the district court's ruling. Separating these claims would create piecemeal litigation. There are not issues of urgency, as has been alleged by the appellants. This additional factual development will aid the court in the claims that have been asserted. And if the court has no further questions, I rest. Thank you, counsel. Rebuttal. Thank you. May it please the court. I'd like to correct several assertions here made by opposing counsel. Number one, a takings claim, whether you call it inverse condemnation or not, does not address procedural problems. It doesn't address what is required for pre-deprivation notice. Just compensation is not relevant to the determination of pre-deprivation due process. That's one reason why you don't need a just compensation claim to ripen a pre-deprivation notice claim, because just compensation is a post-deprivation remedy that doesn't play into the determination of what is pre-deprivation process. Secondly, you'll notice that when counsel disputed, supposedly disputed, the ability of the state courts to enforce damages award and the city's willingness to pay out those awards, that it says it's paid several damages awards lately. After decades and millions of dollars of not paying out, this is hardly an adequate procedure to compensate plaintiffs who suffer takings. And finally, we don't know why this property was demolished. As counsel admits, there's not a big record in this case. There's not a developed record. But we know it was demolished. We know it's gone. We know they have a bill for $11,000. We know it's accruing. We know it's a lien on their property. There's a concrete injury in this case. The issues are fit for review. Nothing more needs to happen. As I mentioned, just compensation doesn't go into whether the deprivation was noticed. Just compensation doesn't go into whether it's reasonable. All these claims are fit for review. And even if the court, Your Honor, even if the court thought that the takings claim was on thinner ice than the others' claims, it wouldn't be prudentially wise to separate these claims at this point. The due process and seizure claims certainly need to go forward under the facts of this case. And the takings claim should go along with them to save the parties and the courts a waste of resources and a waste of time in this case. If there's no questions, I will... I had a question. Your complaint alleges, does it not, that your clients were planning to rehabilitate this property? Yes. And that they were getting financing to do it or something like that? They were... They had two... They didn't know exactly, honestly, Your Honor, what they were going to do with the property. They didn't have a chance to do anything with it before it was torn down. But they wanted to rehabilitate it and sell it, yes. I just wanted to know what's in the pleadings because in any event, the pleadings do not concede that the property was so derelict that it was a danger to... It may have been so derelict that it was derelict within that city ordinance, right? Right. That's correct. It wasn't in imminent danger of collapse. Let's remember, if we're on the facts here, how this came about. This was city property. The city owned this property for 17 years. The city let it be neglected. The city willingly sold it to the Garretts so that they could rehabilitate it and make something of it. The city gained from this and then they turned around and demolished it. If it was in an imminent danger of collapse, which it was not, why would it take so long from the proceedings that resulted in demolition months? It took months between the time the city ordered demolition and the time it actually happened. That fact in itself, if you look at the Kenniston case, for instance, demonstrates that there is at the very least a serious factual issue here about the status of the property. It is our position that it wasn't in imminent danger of collapse and we have the evidence to prove that. What do you say about Ms. Dabolina's contention that under the Louisiana law, that you could in fact recover on all the claims that you assert or damages and so on through inverse condemnation? That's incorrect. You cannot seek invalidation. You cannot get declaratory relief. You cannot get injunctive relief. There's no case law that you could stop a lien through an inverse condemnation. That's an equitable remedy and that's what we're seeking here. There's also no case law in Louisiana that you can remedy a notice violation through a just compensation proceeding or that you can remedy a Fourth Amendment violation through a just compensation proceeding. So the allegation that we could be made whole through an inverse condemnation claim is not correct. You cannot be made whole for traditional due process Fourth Amendment seizure claims like that here. Thank you, Your Honor.